UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BETTERHELP, INC., et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>COLUMBIA CASUALTY COMPANY,<br><br>    Defendant. | Case No. 25-cv-02571-WHO<br><br>**ORDER GRANTING JUDGMENT ON THE PLEADINGS**<br><br>Re: Dkt. Nos. 31, 32, 35, 36 |

In this insurance coverage dispute, plaintiffs Teladoc Health, Inc. ("Teladoc") and BetterHelp, Inc. ("BetterHelp") move for judgment on the pleadings on their breach of contract (Count One) and declaratory relief (Count Four) claims against defendant Columbia Casualty Company ("CNA"). *See* Complaint ("Compl.") [Dkt. No. 1]; Plaintiffs' Memorandum of Points and Authorities in Support of Their Motion for Judgment on the Pleadings ("Mot.") [Dkt. No. 31-1]. Plaintiffs claim that CNA breached its duty to defend after a class action was filed against BetterHelp in 2023 (the "Underlying Action").[1] Mot. at 9; Declaration of T. Connor O'Carroll in Support of Plaintiff's Motion for Judgment on the Pleadings ("O'Carroll Decl.") [Dkt. No. 32] ¶ 5; First Amended Class Action Complaint ("FAC") [Dkt. No. 32-2]. CNA, however, argues that Section D and Exclusion N of the insurance contract ("Policy") act as a complete bar to coverage. *See* Defendant Columbia Casualty Company's Opposition to Plaintiffs' Motion for Judgment on the Pleadings ("Oppo.") [Dkt. 35] at 1–2; O'Carroll Decl. ¶ 4; Policy [Dkt. No. 32-1].

Because Count V of the Underlying Action—violation of the Electronic Communications Privacy Act ("ECPA")—is not precluded by Section D or Exclusion N, CNA has a duty to defend

---

[1] *See In re BetterHelp, Inc. Data Disclose Cases*, No. 3:23-cv-01033-RS (N.D. Cal. 2024).

the entire Underlying Action. Plaintiffs' motion is GRANTED on their breach of contract and declaratory relief claims.

**BACKGROUND**

**I.      The Policy**

BetterHelp is an online "direct-to-consumer mental health platform" offering online counseling and therapy services to consumers. Compl. ¶ 30; FAC ¶ 3. It is owned by Telacom, which acquired the company on January 23, 2015. Mot. at 1; Oppo. at 2.

In 2016, Telacom began working with CNA to develop an insurance policy for BetterHelp. Oppo. at 13 n.3. The parties eventually agreed on a policy and renewed their agreement annually. Defendant's Amended Answer ("Am. Answer") [Dkt. No. 26] at 12. Teladoc was listed as the "Named Insured," while BetterHelp was understood to be the subsidiary. Policy at 4, 13. Both Teladoc and BetterHelp were named as an "Insured Entity." *Id.*

This case arises out of the 2021 version of the parties' contract (#596710529), which provided insurance coverage between August 1, 2021, and August 1, 2022. Policy; O'Carroll Decl. ¶ 4; Declaration of Michael Melendez ("Melendez Decl.") [Dkt. No. 35-1] ¶ 5. Under the Policy, CNA was required to defend plaintiffs in any "Enterprise Liability" claim brought against them, including Network Security Liability, Privacy Injury Liability, Privacy Regulation Proceedings, and Privacy Regulation Fines. Policy at 7.

However, for coverage to apply, plaintiffs were required to show that the Claim adhered to Section D of the Policy, also known as "How Coverage Applies." *Id.* at 8. Section D provides in part:

> D. HOW COVERAGE APPLIES
>
> 1.      [Coverage] appl[ies] only if:
>
> a.  prior to the inception date of this Policy or the first such policy issued and continuously renewed by the Insurer, of which this Policy is a renewal, whichever is earlier;
>     i. no **Executive Officer** knew or should have known that any such **Wrongful Act,** or **Related Wrongful Acts**, might result in such **Claim**;
>     ii. such **Wrongful Act** has not been the subject of any notice given under any prior policy;
> b.  such **Wrongful Act** occurred on or after the applicable

2

> **Retroactive Date** as set forth in the Declarations and prior to the end of the **Policy Period**; and,
> c. the **Claim** is reported to the Insurer in accordance with Section **VI. CONDITIONS**, paragraph **B. NOTICE OF CLAIM OR CIRCUMSTANCE/PRE-CLAIMS ASSISTANCE/DATE OF CLAIM.**

*Id.* (emphasis in original).

The Policy also included numerous exclusions to coverage. Central to this case is Exclusion N, which provides:

> N. PRIOR WRONGFUL ACTS OF SUBSIDIARIES
>
> [This Policy does not apply to any Claim] **based upon or arising out** of any Wrongful Act:
>
> 2. by or on behalf of any Subsidiary whether such Subsidiary qualified as such prior to the inception date of the Policy, or after the inception date of this Policy by virtue of paragraph 1. Of Section VI. CONDITIONS, paragraph K. Coverage for New Subsidiaries or by natural person Insureds of any such Subsidiary, where such Wrongful Act **occurred in whole or in part** before the date the **Insured Entity** first had Management Control;
>
> 3. occurring on or after the date the Insured Entity first had Management Control of any Subsidiary described in paragraph 1. above, which, together with any Wrongful Acts described in paragraph 1. above, would be considered **Related Wrongful Acts**;

*Id.* at 21 (emphasis added).

**II.    The Underlying Action**

On or around June 8, 2022, plaintiffs received a draft administrative complaint from the Federal Trade Commission ("FTC"), which alleged that BetterHelp violated the FTC Act by disclosing consumer health information to third parties without consent.  Compl. ¶ 24; FAC, FTC Draft Complaint [Dkt. No. 32-2] Ex. A ¶¶ 3–9.  Plaintiffs shared the draft complaint with CNA in June 2022.  Compl. ¶ 25; Mot. at 6; Oppo. at 8.

On March 2, 2023, the FTC announced a consent agreement with BetterHelp, which was placed on public record.  FAC, Agreement Containing Consent Order [Dkt. No. 32-2] Ex. B.  The agreement outlined various ways that plaintiffs could provide consumer redress and required payment of a $7,800,000 fine.  *Id.* at 6–21.  Plaintiffs paid this fine to the FTC.  Compl. ¶ 27.

3

On March 7, 2023, a class of current and former BetterHelp users filed the Underlying Action against BetterHelp, claiming violations under both federal and state law. FAC; *see* O'Carroll Decl. ¶ 5. One claim raised in the Underlying Action is Count V—violation of the ECPA. FAC ¶¶ 71–72, 217–35. Under this claim, the class action plaintiffs assert that BetterHelp "divulged" confidential user information, including email addresses, from its electronic storage network to Meta Platforms ("Meta") from January 2017 to September 2021. *Id.* ¶¶ 220, 222–23. They maintain that this information was taken from an "Intake Questionnaire" that all BetterHelp users were required to complete prior to using the service. *Id.* ¶ 220.

Shortly after being served, BetterHelp and Teladoc notified CNA of the pending lawsuit. Compl. *See* Compl. ¶ 38; Oppo. at 8. On June 23, 2023, CNA sent plaintiffs a letter denying coverage. O'Carroll Decl. ¶ 7, Letter Denying Coverage ("Letter") [Dkt. No. 32-4]. In its letter, CNA advised plaintiffs that the Underlying Action and FTC draft complaint were "unequivocally related to and interrelated with one another," as they "evolve[d] out of and concern[ed] the same facts and circumstances." Compl. ¶ 41; Letter at 6. However, because the wrongful acts alleged in the Underlying Action occurred *before* the Policy coverage applied, CNA concluded that Exclusion N barred coverage. *Id.* ¶ 44; Letter at 2. CNA also claimed that Section D precluded coverage, as Teladoc officials received notice from the FTC prior to the Underlying Action that they were being investigated for their business practices. Letter at 2, 5.

Plaintiffs filed suit against CNA on March 14, 2025, asserting four claims for relief. Compl. ¶¶ 1, 53–92; O'Carroll Decl. ¶ 3. Defendant answered on April 23, 2025, and filed an amended answer on June 6, 2025. Defendant's Answer to Complaint ("Answer") [Dkt. No. 18]; Am. Answer. On July 16, 2025, plaintiffs moved for judgment on the pleadings on Count One for breach of contract and Count Four for declaratory relief, both premised on the duty to defend. *See* Mot. CNA opposed the motion on August 6, 2025, and plaintiffs subsequently filed a reply on August 20, 2025. *See* Oppo.; Plaintiffs' Reply in Support of their Motion for Judgment on the Pleadings ("Repl.") [Dkt. No. 36].

## LEGAL STANDARD

Federal Rule of Civil Procedure ("FRCP") 12(c) provides that "[a]fter the pleadings are

4

closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. Proc. 12(c). "Dismissal under Rule 12(c) is warranted when, taking the allegations in the complaint as true, the moving party is entitled to judgment as a matter of law." *Daewoo Elecs. Am. Inc. v. Opta Corp.*, 875 F.3d 1241, 1246 (9th Cir. 2017) (citation omitted). "[M]otions for judgment on the pleadings are functionally identical to Rule 12(b)(6) motions." *Webb v. Trader Joe's Co.*, 999 F.3d 1196, 1201 (9th Cir. 2021) (internal quotation marks omitted) (citing *United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011)). "[U]nder both rules, 'a court must determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy.'" *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (citation omitted). For both motions, dismissal may be based on either the lack of a cognizable legal theory or absence of sufficient facts alleged under a cognizable legal theory. *Robertson v. Dean Witter Reynolds, Inc*., 749 F.2d 530, 534 (9th. Cir. 1984) (citation omitted). As with 12(b)(6) motions, inferences must be drawn in favor of the nonmoving party. *Usher v. City of L.A.*, 828 F.2d 556, 561 (9th Cir. 1987).

A plaintiff's complaint must allege facts to state a claim for relief that is plausible on its face. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). A claim has "facial plausibility" when the party seeking relief "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although the court must accept as true the well-pled facts in a complaint, conclusory allegations of law and unwarranted inferences will not defeat an otherwise proper Rule 12(b)(6) motion. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and footnote omitted).

## DISCUSSION

At issue in this case is whether CNA has a duty under the Policy to defend BetterHelp in the Underlying Action. Plaintiffs argue that at least one of the claims in the Underlying Action

raises the possibility of policy coverage, thus triggering the duty to defend. *See* Mot. CNA conversely argues that the duty to defend is inapplicable here because (1) BetterHelp had executive knowledge of wrongful acts, precluding coverage under Exclusion D; and (2) Exclusion N serves as a complete bar to coverage. *See* Oppo. I address both parties' arguments, but structure my reasoning based on CNA's two defenses, as it is the insurer's burden to demonstrate there is no possible theory that would bring a single issue within coverage. *Montrose Chem. Corp. v. Superior Ct.*, 6 Cal. 4th 287, 299–300 (1993).

## I. Principles of Contract Formation

### A. Contract Construction

As an initial matter, jurisdiction in this case is based on diversity, and neither party disputes that the construction of the Policy is governed by California law. *See Integon Nat'l Ins. Co. v. Reece*, 423 F. Supp. 3d 831, 840 (E.D. Cal. 2019).

California courts interpret insurance contracts under "ordinary rules of contractual interpretation." *L.A. Lakers, Inc. v. Fed. Ins. Co.*, 869 F.3d 795, 800 (9th Cir. 2017) (quoting *Palmer v. Truck Ins. Exch.*, 21 Cal. 4th 1109, 1115 (1999)). The "mutual intention of the parties at the time the contract is formed governs interpretation." *Palmer*, 21 Cal. 4th at 1115 (citation omitted). Courts infer intent from the "written provisions of the insurance policy. If the policy language is clear and explicit, it governs." *Id.* (citations omitted). If a contract term is ambiguous, it should be interpreted "to protect the objectively reasonable expectations of the insured." *Minkler v. Safeco Ins. Co. of Am.*, 49 Cal. 4th 315, 321 (2010), *opinion after certified question answered sub. nom. Minkler v. Safeco Ins. Co.*, 399 F. App'x 230 (9th Cir. 2010) (citation omitted). In insurance contracts, "basic coverage provisions are construed broadly in favor of affording protection, but clauses setting forth specific exclusions from coverage are interpreted narrowly against the insurer." *Id.* at 322.

### B. Duty to Defend

Under California law, "[a]n insurer has a very broad duty to defend its insured." *Anthem Elecs., Inc. v. Pac. Emp'rs Ins. Co.*, 302 F.3d 1049, 1054 (9th Cir. 2002). If any potential for insurance coverage exists, the duty to defend is "immediate." *Montrose Chem. Corp.*, 6 Cal. 4th

6

at 295. But "the duty to defend, although broad, is not unlimited; it is measured by the nature and kinds of risks covered by the policy." *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 19 (1995).

In determining whether a duty to defend exists, the following steps are available for a court to review. First, an insured can establish potential liability by showing that the "underlying claim *may* fall within policy coverage." *Montrose Chem. Corp.*, 6 Cal. 4th at 300 (emphasis in original). The burden then shifts to the insurer to demonstrate the claim "cannot" fall within policy coverage, or that "a specific exclusion applies." *Id.*; *Minkler*, 49 Cal. 4th at 322. Only when the underlying action "can *by no conceivable theory raise a single issue which could bring it within the policy coverage*" is an insurer excused from its duty to defend. *Montrose Chem. Corp.*, 6 Cal. 4th at 300 (emphasis in original; citation omitted). This is a low bar and supports finding coverage. Insurers similarly bear the burden of "establishing that a specific [policy] exclusion" applies. *Minkler*, 49 Cal. 4th at 322. "Any doubt as to whether [the duty to defend exists] is resolved in favor of the insured." *Pension Tr. Fund for Operating Eng'rs v. Fed. Ins. Co.*, 307 F.3d 944, 949 (9th Cir. 2002).

Extrinsic evidence may be used by both parties to generate a duty to defend as well as to extinguish one. *Montrose*, 6 Cal. 4th at 291. Extrinsic evidence can used by insurer to "defeat the defense duty" by presenting "undisputed facts which conclusively eliminate a potential for liability." *Id.* at 298–99.

**C. Evidentiary Burden – 12(c) Motion Versus Duty to Defend**

The parties dispute who bears the burden of proof at this stage of litigation. CNA argues that all inferences must be drawn in their favor as the nonmoving party. *See* Oppo. at 9–10. BetterHelp asserts that the burden rests on CNA, as the insurer, to establish that the claim is not covered by the policy. *See* Mot. at 9–11.

In a similar case, *Government Employees Insurance Company v. Nadkarni*, an insurance company sued an insured party, and the insured party moved for judgment on the pleadings. 391 F. Supp. 3d 917 (N.D. Cal. 2019). While the Hon. Laurel Beeler did not address the inference of a 12(c) motion versus the burden for a duty to defend directly, her opinion relied on GEICO's arguments to demonstrate whether the duty to defend existed for the judgment on the pleadings.

*Id.* at 926–28. That approach makes sense. Although a 12(c) motion mirrors a 12(b)(6) motion and inferences should be drawn in favor of the nonmoving party, the duty to defend still places the burden on the insurers, CNA, to establish that policy exclusions apply and that there is no possibility that a claim can fall within policy coverage.

## II. CNA Fails to Conclusively Show that BetterHelp Executives Had Knowledge of the Underlying Action.

Under Section D, the duty to defend is not required if, prior to the inception of the contract, an "Executive Officer [of the insured] knew or should have known" of any "Wrongful Act, or Related Wrongful Acts" that might result in a civil claim. Policy at 8. As a threshold matter, I must decide whether BetterHelp executives had knowledge of the wrongful acts alleged in the Underlying Action prior to the Policy beginning in August 2021.

CNA argues that Section D bars coverage of the Underlying Action because BetterHelp's executive officers "knew" or "should have known" about the alleged wrongful acts in the Underlying Action. *See* Policy at 8; Oppo. at 12. Plaintiffs, by contrast, argue that CNA has not met its burden to show that Section D exclusion applies with "conclusive evidence." Repl. at 4–6.

To support its assertion, CNA relies on its June 2023 Letter Denying Coverage. *See* Letter. In the letter, CNA claimed that a "publicly available" report indicated plaintiffs "received a Civil Investigative Demand ("CID") from the FTC on July 30, 2020 that . . . questioned BetterHelp's business practices." *Id.* at 2. Because plaintiffs were aware that the FTC was investigating their business practices, CNA speculates that BetterHelp executives "knew" about the wrongful acts in the Underlying Action. *Id.* But this publicly available report does not disclose the subject matter of the CID. *See id.* Nor does it show whether the CID is connected to the Underlying Action. *Id.* As a result, the CID and letter do not facially demonstrate how BetterHelp had knowledge of the alleged Wrongful Acts.

Even assuming the letter and CID *are* evidence of executive officer knowledge, a factual dispute remains over whether BetterHelp knew about the Underlying Action. "[U]nresolved factual disputes impacting insurance coverage do not absolve the insurer of its duty to defend." *Howard v. Am. Nat'l Fire Ins. Co.*, 187 Cal. App. 4th 498, 520 (2010). If the coverage of the

1   insured hinges on a disputed factual question, "the very existence of that dispute would establish a
2   possibility of coverage and thus a duty to defend." *Mirpad, LLC v. Cal. Ins. Guarantee Ass'n*, 132
3   Cal. App. 4th 1058, 1068 (2005).  Because it is possible that BetterHelp lacked executive
4   knowledge, a possibility of coverage—and thus a duty to defend—still exists.  *See id.*  CNA has
5   not met its burden to suggest otherwise.

### III. Exclusion N Does Not Apply to All Wrongful Acts in the Underlying Action.

The more difficult question is whether Exclusion N serves as a total bar to coverage.  The parties dispute the meaning of four key terms in Exclusion N: (1) "based on or arising out of"; (2) "occurred"; (3) "other related wrongful acts"; and (4) "insured entity."  Plaintiffs assert that such language is "ambiguous" and does not place them on notice of any exclusionary effects.  Mot. at 16–17.  CNA argues instead that these terms are clear when reading the Policy in context.  Oppo. at 19.  I address each in turn.  While I do not find that any of the terms is ambiguous, I find that the Underlying Action does not completely arise out of pre-2015 acts given the ECPA claims, which arise in 2017.  Accordingly, Exclusion N is not a total bar to coverage and CNA has a duty to defend.

#### A. "Arising Out of" and "Arising From"

In insurance contracts, California courts "have interpreted the terms 'arising out of' or 'arising from' broadly." *The Travelers Prop. Cas. Co. of Am. v. Actavis, Inc.*, 16 Cal. App. 5th 1026, 1045 (2017). "It is settled that this language does not import any particular standard of causation or theory of liability into an insurance policy.  Rather, it broadly links a factual situation with the event creating liability, and connotes only a minimal causal connection or incidental relationship." *Id.* (quoting *Acceptance Ins. Co. v. Syufy Enters.*, 69 Cal. App. 4th 321, 328 (1999)).  California courts have clarified that at least *some* causal connection is necessary, though a broad interpretation of causation is all that is required.  *See Acceptance Ins. Co.*, 69 Cal. App. 4th at 328–30; *see also Fireman's Fund Ins. Co. v. Discover Prop. & Cas. Ins. Co.*, No. C 08-03079 WHA, 2009 WL 2591394, at *3 (N.D. Cal. Aug. 21, 2009) ("Although the phrase 'arising out of' should be broadly read to require only a minimal causal connection, it requires more than 'but for' causation." (citation omitted)).

9

1          CNA maintains that the "arising out of" language, along with Section (1) of Exclusion N,
2   overcomes the duty to defend. *See* Oppo. at 14–16. Section (1) provides that CNA is not required
3   to provide coverage for the wrongful acts committed by BetterHelp prior to Teladoc assuming
4   "management control" in 2015. Policy at 21. CNA points to evidence in the FTC draft complaint
5   suggesting that BetterHelp's "mishandling of consumers' private information began as early as
6   2013," two years prior to Teladoc assuming "management control." Oppo. at 16. Because all the
7   facts in the Underlying Action seem to "aris[e] out of" the pre-2015 conduct, CNA concludes, the
8   duty to defend does not apply. *See id.* at 14–16.

9          To support its argument, CNA relies on *Los Angeles Lakers, Inc v. Federal Insurance
10  Company*. 869 F.3d 795 (9th Cir. 2017). In *Los Angeles Lakers*, plaintiffs sought coverage from
11  their insurance policy for a third-party class action lawsuit alleging privacy violations under the
12  Telephone Consumer Protection Act ("TCPA"). *Id.* at 799. The class action arose from an
13  announcement at a basketball game to text a number to have a message displayed on the
14  scoreboard; once participants texted that number, they then received a response via an automatic
15  telephone dialing system without their consent. *Id.* Plaintiffs' policy excluded coverage of any
16  claim "based upon, [or] arising from . . . [an] invasion of privacy." *Id.* at 800. The policy also
17  excluded coverage of claims for damages arising from TCPA violations. *Id.* Upon review, the
18  Ninth Circuit found that the "arising out of" language excluded coverage of any claim with "'a
19  minimal causal connection or incidental relationship' to [an] invasion of privacy." *Id.* at 801
20  (citation omitted). Applying *Los Angeles Lakers*, CNA argues that the "arising out of" language
21  in Exclusion N should be interpreted as applying to any claim with a "minimal causal connection
22  or incidental relationship" to the pre-2015 wrongful acts. *See* Oppo. at 15.

23         *Los Angeles Lakers* is distinguishable on at least two grounds. In that case, the sought
24  coverage was expressly excluded from the policy. Here, the Policy specifically provides
25  protection for "Privacy Injury Liability." *See* 869 F.3d at 800–01; Policy at 1. And, as I explain
26  below, certain claims in the Underlying Action do not relate to any pre-2015 conduct. *See id.*
27  Instead, they involve isolated sets of post-2015 disclosures. *Id.* Given these differences, I do not
28  find *Los Angeles Lakers* persuasive.

This case is more analogous to *Foster Farms*, an insurance case I previously decided. *Foster Farms, LLC v. Everest Nat'l Ins. Co.*, 670 F. Supp. 3d 953 (N.D. Cal. 2023). In *Foster Farms*, a poultry farm purchased insurance after an antitrust lawsuit was brought against them for their chicken production. *Id.* at 956–59. The insurance policy excluded coverage for any claims that "arose from" chicken antitrust claims preceding the policy period. *See id.* Later, the farm was sued for alleged antitrust violations concerning its turkey products. *See id.* Despite the difference in products, the insurance company denied coverage, claiming that the lawsuit "arose from" the chicken antitrust claims. *Id.* After applying principles of contract interpretation, I held that the "arising out of" language was unambiguous but did not bar coverage for the underlying action. *See id.* Despite similar allegations in both lawsuits, the exclusion did not apply because the alleged turkey activities could have occurred irrespective of the alleged chicken activities. *Id.* at 967.

Like the language in *Foster Farms*, I agree that "arising out of" in Exclusion N is unambiguous. *See id.* Even so, I also find that the Underlying Action does not completely "arise out of" pre-2015 wrongful acts. *See id.*; *The Travelers Prop. Cas. Co. of Am.*, 16 Cal. App. 5th at 1045. In the Underlying Action, Count V of the complaint—alleging violations of the ECPA—focuses on specific actions beginning in January 2017, when plaintiffs allegedly disclosed user email addresses to Meta. FAC ¶¶ 71–72, 217–35. While the sharing of personal data is certainly an overarching theme of the Underlying Action, CNA does not show how the pre-2015 wrongful acts are causally connected to the ECPA claim. *See The Travelers Prop. Cas. Co. of Am.*, 16 Cal. App. 5th at 1045.

In fact, both the Underlying Action and the FTC draft complaint indicate that the ECPA claim is distinct from any pre-2015 incidents. The FTC draft complaint expressly distinguishes between the "two ways" BetterHelp purportedly disclosed user health information to Meta: (1) through direct upload of user email addresses (beginning in 2017), and (2) automatic disclosure of user information through web beacons (pre-2015 activity). FAC, FTC Draft Complaint ¶¶ 51–53. This is also reflected in the Underlying Action, which treats the ECPA claim as a separate offense occurring between January 2017 and September 2021. *See* FAC ¶¶ 71–72, 217–35.

11

1    CNA has not met its burden in showing a causal link between the pre-2015 events and the
2    Underlying Action.  Accordingly, the "arising out of" language does not suggest that Exclusion N
3    applies.

### B. "Occurred"

Under Exclusion N, no duty to defend exists when a "Wrongful Act occurred in whole or in part before the Insured Entity first had Management Control."  Policy at 21.  Plaintiffs maintain that the omission of the words "alleged" or "allegations" before "occurred" is a "deliberate" choice suggesting that alleged acts are not meant to be covered by Exclusion N.  Mot. at 15.  In response, CNA argues that plaintiffs' analysis is an improper way to evince the intent behind Exclusion N.  Oppo. at 17–19.

Plaintiffs rely on *Foster-Gardner, Inc. v. National Union Fire Insurance Company* to argue that the omission of "alleged" is indicative of CNA's intent to exclude alleged wrongful acts.  18 Cal. 4th 857, 880 (1998).  In *Foster-Gardner*, the California Supreme Court found no duty to defend for an insurance company policy that differentiated coverage between "suit[s]" and "claim[s]."  *Id.*  Plaintiffs argue that as in *Foster-Gardner*, CNA's use of "alleged" in other parts of the contract—namely, Exclusions B, E, F, L, M, O, P, and R—demonstrates that the omission of the word in Exclusion N was deliberate.  *See* Repl. at 10; Policy at 19–22.

I agree with CNA that *Foster-Gardner* is inapposite here.  Unlike *Foster-Gardner*, which focused on intentional differences in the use of "suit" versus "claim," the Policy completely omits "alleged" from Exclusion N.  *See id.*; 18 Cal. 4th at 880.  Even so, none of the exclusions cited by plaintiffs refer to wrongful acts and instead refer to specific violations of state or federal law.  *See* Policy at 19–22.  Because plaintiffs cannot establish a prima facie case that the omission of "alleged" in Exclusion N is meaningful, their argument falls flat.  A duty to defend does not arise solely out of the "occurred" language in Exclusion N.

### C. "Related Wrongful Acts"

The parties also dispute whether the Underlying Action involves a "Related Wrongful Act" as described in Section (2) of Exclusion N.  Policy at 21.  CNA contends that the plain language of Exclusion N serves as a total bar to coverage, as the entire Underlying Action is "related" to

conduct occurring prior to Teladoc's control of BetterHelp. Oppo. at 14–17. Plaintiffs, however, argue that the claims in the Underlying Action involve distinct wrongful acts with no logical correlation to one another. *See* Mot. at 15.

California law has consistently held that the meaning of "related" encompasses both causal and logical connections. *See Bay Cities Paving & Grading, Inc., v. Lawyers' Mutual Ins. Co.*, 5 Cal. 4th 854, 868 (1993); *see also Fin. Mgmt. Advisors, LLC v. Am. Int'l Specialty Lines Ins. Co.*, 506 F.3d 922, 926 (9th Cir. 2007) (noting with approval the logical and causal connection explained in *Bay Cities*). Different acts are "logically related" when they are "part of a single course of conduct or a single plan." *Liberty Surplus Ins. Corp. v. Samuels*, 562 F. Supp. 3d 431, 442 (N.D. Cal. 2021).

In *Foster Farms*, I considered a similar question of how the word "related" should be understood in an exclusionary clause. 670 F. Supp. 3d at 969–70. There, I decided that whether a claim is "related" hinges on whether there is a causal connection between the alleged wrongful acts. *Id.* at 973. Applying that standard to the facts of that case, I concluded that there lacked a causal connection between the chicken and turkey antitrust suits because each suit involved different wrongful acts and products. *Id.* at 972.

As discussed above, Count V alleges that BetterHelp disclosed email addresses to Meta in 2017, years after the pre-2015 alleged wrongful acts. FAC ¶¶ 71–72, 217–35. Applying *Foster Farms*, the Underlying Action can therefore be understood as involving separate events, transactions, and situations that are not causally or logically correlated. *See id.* Because CNA has not met its burden in proving otherwise, the "related" language of Exclusion N does not bar coverage of the Underlying Action.

**D. "Insured Entity"**

Finally, the parties dispute whether the use of "Insured Entity" is impermissibly vague. Exclusion N denies coverage for any "Wrongful Act" committed by a Subsidiary that "occurred in whole or in part before the date the Insured Entity first had Management Control." Policy at 21. The Policy later defines "Insured Entity" as both "the Named Insured and any Subsidiary." *Id.* at 7. Because both BetterHelp and Teladoc are considered an "Insured Entity," plaintiffs conclude

13

that Exclusion N is ambiguous as to when "Management Control" occurs. Mot. at 16–17.

In response, CNA suggests that plaintiffs "attempt to manufacture an ambiguity" by reading the Exclusion out of context. Oppo. at 19. When reading the Policy in its entirety, CNA asserts, Exclusion N is clearly understood to limit coverage for Wrongful Acts before BetterHelp was under control by Teladoc. *See id.*

Reading the Policy "as a whole, and in context," I agree with CNA. *Minkler*, 49 Cal. 4th at 322. While Exclusion N may seem confusing on its face, reading the Exclusion in its broader context reveals its meaning. Exclusion N is intended to limit wrongful acts of the Subsidiary before it was under management control of the Insured Entity. The language of the Policy is not ambiguous.

All that said, Exclusion N does not apply because violation of the ECPA, as alleged in Count V of the Underlying Action, falls entirely within the applicable coverage period. That triggers the duty to defend.

## CONCLUSION

CNA has not met its burden in showing that Section D and Exclusion N overcome a duty to defend plaintiffs. The motion for judgment on the pleadings on Counts One for breach of contract and Four for declaratory relief is GRANTED.

**IT IS SO ORDERED.**

Dated: October 29, 2025

William H. Orrick
United States District Judge